IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN HISTORICAL ASSOCIATION, AMERICAN OVERSIGHT,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD TRUMP, in his official capacity as President of the United States and in his personal capacity, *et al.*,<br><br>*Defendants*. | Case No. 26-cv-1169 |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTION TO
<u>NOTICE OF RELATED CASE</u>**

This case and *American Oversight v. U.S. Department of Government Efficiency*, No. 25-cv-409-BAH (D.D.C.) ("*DOGE*"), involve a common set of government property—a discrete set of records of the U.S. DOGE Service (USDS)—for which there are common factual questions and adjudication by the same court is critical to avoiding conflicting or incongruous rulings regarding the handling and disposition of the same records. The risk that the two cases will lead to conflicting obligations imposed on USDS, or that the outcome of one case will prejudice the rights of the plaintiffs in the other case, is very real because USDS is taking conflicting factual and legal positions regarding the same records in the cases.

Namely, in *DOGE*, USDS is asserting that the records American Oversight seeks under FOIA are covered by the Presidential Records Act (PRA), not the Federal Records Act, and that USDS as a factual matter is preserving the records under the PRA. Here, USDS argues that the exact same records are not subject to the PRA, because the PRA is purportedly a legal nullity,

1

and USDS has refused to commit that, as a factual matter, it is handling the records in accordance with the PRA's requirements. If courts rule for USDS in both cases, that would mean these records are not covered by *any* records preservation laws and USDS could immediately destroy them before plaintiffs in either case could obtain appellate relief. If the courts rule against USDS in both cases, the orders in the two cases could impose conflicting requirements on USDS over the retention, disclosure, and ongoing custody of the same set of records.

Plaintiffs recognize that Local Rule 40.5 is a narrow exception to random assignment, and Plaintiffs do not invoke it lightly. But this is the unusual case in which the overlap is not merely legal or thematic: there is a common *res* across the cases for which a holistic assessment and resolution is essential. Plaintiffs thus respectfully request that this Court hear both cases.

ARGUMENT

### A. This Case and *DOGE* Relate to Common Property

Local Rule 40.5(a)(3)(i) provides that two matters are related where they "relate to common property."[1] Although there is little direct precedent on the scope of this provision, Judge Moss has explained that a related case designation under this provision would be proper in "a situation where a decision by one judge concerning a single piece of property might alter the factual background that a different judge must examine to issue a decision concerning that same property." *See J&K Prods., LLC v. Small Bus. Admin.*, 589 F. Supp. 3d 95, 99 (D.D.C. 2022). Or

---

[1] In noticing this case as related to *DOGE*, Plaintiffs mistakenly selected only the box for "involves common issues of fact," and not also the box for "relates to common property." *See* Pls.' Not., ECF No. 4. Plaintiffs apologize for the oversight and will amend their related case designation if so directed. Plaintiffs respectfully submit that the related case designation should be determined under all appropriate grounds under Local Rule 40.5. Defendants also cannot claim prejudice because their Objection addressed the propriety of a related case designation under the "common property" prong. Defs.' Obj., ECF No. 10, at 2–3 n.1.

2

the provision would be properly invoked "where the Court has exercised *in rem* jurisdiction over a single piece of property that is the subject of other lawsuits pending in this district." *Id.*

These scenarios highlight a broader concern animating the "common property" designation, which Judge Moss analogized to the purposes of Federal Rules of Civil Procedure 19(a) and 22(a): having different courts issue orders on the same property presents "a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." *J&K Prods.,* 589 F. Supp. 3d at 99 (quoting Fed R. Civ. Pr. 19(a)(1)(B)(ii)). The "common property" designation ensures holistic consideration of the handling and disposition of specific property, so that parties are not subject to inconsistent obligations regarding the property, and so that the resolution of one case does not prejudice a party's rights regarding the property in the second case.

These considerations are squarely implicated here. Federal government records are property of the United States, *see* 44 U.S.C. §§ 2202, 3101, and the same government property at issue in *DOGE* is at issue here. The records at issue in *DOGE* include a discrete set of records of the U.S. DOGE Service that are responsive to American Oversight's FOIA requests in that case (the "Common Records"). This case involves those same Common Records: USDS is a Defendant here and Plaintiffs seek to ensure that all Presidential records held by Defendants— including the Common Records to the extent USDS falls under the PRA—are preserved and ultimately made public as required by the PRA. The Common Records at issue in the two cases are "common property."

With respect to that common property, USDS is taking inconsistent legal and factual positions in the two cases. USDS is asserting in *DOGE* that the Common Records are subject to the PRA and not the Federal Records Act (FRA) as a legal matter, and that it is handling the Common Records in accordance with the PRA as a factual matter. Mem. in Opp. to Pl.'s Mot.

for Preservation Order at 1, *DOGE*, No. 25-cv-409-BAH (D.D.C. Mar. 27, 2025), ECF No. 13.

Here, USDS will assuredly assert that the Common Records are *not* subject to the PRA as a legal

matter, based on OLC's opinion that the PRA is unconstitutional in its entirety. *See*

Constitutionality of the Presidential Records Act, 50 Op. O.L.C. __ (Apr. 1, 2026) (slip op.). And

as a factual matter here, USDS has refused to state that it is preserving the Common Records in

accordance with the PRA's requirements. *See* Ex. A to Pls.' PI Mot., ECF No. 13-3 (email

correspondence).

These divergent legal and factual positions by the same Defendant (USDS) concerning

the same property (the Common Records) could easily lead to inconsistent or incongruous results

or obligations across the cases. For example, in *DOGE*, the court may find that USDS need not

release the Common Records under FOIA because it is subject to the PRA rather than the FRA,

as USDS argues in *DOGE*. In this case, a court may hold that USDS is not subject to the PRA,

and need not preserve the Common Records pursuant to the PRA, because the PRA is

unconstitutional, as USDS will argue here. The combined result would be that the Common

Records are not subject to *any* records law, and USDS would be free to destroy the Common

Records. And if two different courts rule for USDS in the two cases, and the plaintiffs in both

cases appeal, it is possible USDS could destroy the Common Records while the appeals are

pending, mooting both appeals with respect to the Common Records. Having a single court

preside over both cases would enable the court to consider these possible outcomes in

adjudicating the merits, the equities, and any need for potential preliminary relief or relief

pending appeals. And more generally, it would help protect against the outcome of one case

prejudicing the rights of the plaintiffs in the other case.

It is also entirely possible that there could be incongruous rulings in the opposite direction—against USDS in both cases—which could subject USDS to conflicting obligations.[2] For example, the court in this case could preliminarily or permanently enjoin USDS to preserve and dispose of the Common Records in accordance with the PRA's requirements. But if the court in *DOGE* holds that the Common Records actually fall under the FRA, that would mean that the Common Records legally are not subject to the PRA. *See* 44 U.S.C. § 2201(2)(B) (excluding FRA records from the definition of a Presidential record).

What's more, as FRA records, USDS would have to handle the Common Records under an FRA records schedule, which provides for different retention periods and dispositions than the PRA. Whereas all PRA records of the current administration will have to be transferred to NARA in January 2029, 44 U.S.C. § 2203(g), the FRA typically requires longer retention periods within the originating agency (here, USDS) for records of senior officials, and shorter retention periods for more junior officials.[3] Moreover, if the Common Records are deemed subject to the FRA in *DOGE*, they must be promptly produced under FOIA, but if they are considered subject to the PRA in this case, the President would maintain full control over the records while in office. 44 U.S.C. § 2203(f).

The bottom line is that unless the cases are considered together, there is "a substantial risk of incurring double, multiple, or otherwise inconsistent obligations" regarding the same property, *J&K Prods.,* 589 F. Supp. 3d at 99 (quotations omitted), or having a ruling in one case prejudice the plaintiffs' rights in the other. At a minimum, this is certainly "a situation where a

---

[2] Moreover, if USDS were to lose in *DOGE* during the pendency of this case, requiring them to comply with the FRA, it may moot USDS out of this case.

[3] *See* General Records Schedule 6.1: Email and Other Electronic Messages Managed Under a Capstone Approach, NARA, https://www.archives.gov/files/records-mgmt/grs/grs06-1.pdf (differentiating retention requirements based on seniority).

decision by one judge concerning a single piece of property might alter the factual background that a different judge must examine to issue a decision concerning that same property." *Id.*

### B. This Case and *DOGE* Involve Common Issues of Fact

For similar reasons, this case and *DOGE* also concern common questions of fact. Most importantly, there is the common question of how USDS is, in fact, handling the Common Records. DOGE has stated unequivocally in *DOGE* that it is handling the Common Records in accordance with the PRA. But in this case, USDS has been unwilling to state that it is handling the Common Records in accordance with the PRA's requirements. The records policies and practices that USDS will follow moving forward, including with respect to the Common Records, will also be a common and potentially evolving factual issue in both cases.

Relatedly, to the extent disputes arise over whether any of the Common Records have been destroyed or mishandled, or where they are even located, those will be common factual questions across the two cases. For these and other common factual questions, it would be an inefficient use of "judicial resources … to have another court address the same factual issues." *Singh v. McConville*, 187 F. Supp. 3d 152, 157 (D.D.C. 2016) (cleaned up).

Dated: April 15, 2026

Respectfully submitted,

*/s/ Daniel F. Jacobson*

Daniel F. Jacobson (D.C. Bar 1016621)
Lynn D. Eisenberg (D.C. Bar 1017511)
John Robinson (D.C. Bar 1044072)
JACOBSON LAWYERS GROUP PLLC
5100 Wisconsin Ave NW, Suite 301
Washington DC, 20016
(301) 823-1148
dan@jacobsonlawyersgroup.com

*/s/ Loree Stark*
Loree Stark

6

D.C. Bar No. 90021926
American Oversight
1030 15th Street NW, B255
Washington, D.C. 20005
(202) 869-5246
loree.stark@americanoversight.org

*Counsel for Plaintiffs*