**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AMERICAN HISTORICAL ASSOCIATION and AMERICAN OVERSIGHT, | |
| Plaintiffs, | |
| v. | Civil Action No. 26-1169 (BAH) |
| DONALD TRUMP, *et al.*, | Judge Beryl A. Howell |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

On April 6, 2026, plaintiffs, the American Historical Association and American Oversight, both "nonprofit" organizations, Compl. ¶¶ 9-10, ECF No. 1, filed this action against the President, along with several other Executive Branch officials and offices, asserting claims for, *inter alia*, violations of the separation of powers and the Administrative Procedure Act, 5 U.S.C. § 706(1)-(2), and ultra vires actions, based on allegations that "the Office of Legal Counsel (OLC) advised the White House that the President may disregard the Presidential Records Act [("PRA")]—the longstanding federal law requiring the preservation of records reflecting the official activities of the President, the Vice President, and White House staff." *Id.* ¶ 3. This advice was provided in an OLC opinion issued on April 1, 2026 ("OLC Opinion") "declaring that the PRA is facially unconstitutional, in its entirety." *Id.* ¶ 87. Plaintiffs seek multiple forms of relief, including declaring "that the PRA is constitutional," enjoining defendants "from relying on the OLC Opinion . . . and to comply with their mandatory duties under the PRA," enjoining the individual defendants, other than the President in his official capacity, to disclose to the Court "instances in which the President destroys, converts to personal use, or otherwise fails to maintain Presidential

1

records as required by the PRA," and enjoining the President, in his personal capacity, "after the conclusion of his term in office from retaining, destroying, disposing, or otherwise handling Presidential records in a manner not in accordance with the PRA, and to turn over all Presidential records in his actual or constructive possession to NARA [National Archives and Records Administration] as required by the PRA." *Id.* at 45 (Request for Relief).

Along with the Complaint, plaintiffs filed a Notice of Related Case, ECF No. 4, indicating that this case is related to *American Oversight v. U.S. Department of Government Efficiency*, No. 25-cv-409 (BAH) (D.D.C. filed Feb. 11, 2025), filed in February 2025 and pending before the undersigned. The case identified as related has one of the same plaintiffs as in the instant case, American Oversight, and was brought, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against the Department of Government Efficiency ("DOGE"), the Office of Management and Budget ("OMB"), and some related government entities (collectively, the "*American Oversight* defendants"), to enforce FOIA's statutory right for access to information responsive to eight FOIA requests seeking information about Elon Musk, at that time serving as "DOGE's apparent leader," and his and his aids' communications about DOGE's activities. First Am. Compl. ("*Am. Oversight* FAC") ¶¶ 4, 84, 96-97, 110, 113, 117, 120, 123, 126, *Am. Oversight*, No. 25-cv-409 (BAH) (filed Mar. 5, 2025), ECF No. 5.

Due to plaintiffs' Notice of Related Case to *American Oversight*, the instant case was directly assigned to the undersigned, pursuant to this Court's Local Civil Rule 40.5(c)(1). *See* D.D.C. LCvR 40.5(c)(1) ("Where the existence of a related case in this Court is noted at the time . . . the complaint is filed, the Clerk shall assign the new case to the judge to whom the oldest related case is assigned."). On April 10, 2026, defendants filed an objection to the relation of the instant case to *American Oversight*, Defs.' Obj. to Pls.' Not. of Related Case ("Defs.' Obj."), ECF

No. 10, and, without responding to that objection, plaintiffs, on April 14, 2026, filed a Motion for Preliminary Injunction and Stay ("PI Motion"), ECF No. 13.  The same day as the filing of the PI Motion, the parties were directed to propose a schedule for briefing on that motion by 2:00 PM on April 15, 2026, and for plaintiffs to submit, by the same time, any response to defendants' objection to relation of the case, which plaintiffs did.  *See* Minute Orders (Apr. 14, 2026); Pls.' Resp. to Defs.' Obj. to Not. of Related Case ("Pls.' Opp'n"), ECF No. 15.

Upon consideration of defendants' Notice and plaintiffs' Opposition, and for the reasons described below, defendants' objection to the relation of the case is sustained, and this case is transferred to the Calendar and Case Management Committee for prompt random reassignment.

## I.    LEGAL STANDARD

"The general rule is that all new cases filed in this courthouse are randomly assigned in order to ensure greater public confidence in the integrity of the judicial process, guarantee fair and equal distribution of cases to all judges, avoid public perception or appearance of favoritism in assignments, and reduce opportunities for judge-shopping." *Dakota Rural Action v. U.S. Dep't of Agric.*, No. 18-cv-2852 (BAH), 2019 WL 1440134, at *1 (D.D.C. Apr. 1, 2019) (internal quotation marks and alterations omitted) (quoting *Singh v. McConville*, 187 F. Supp. 3d 152, 154-55 (D.D.C. 2016), and *Tripp v. Exec. Off. of the President*, 196 F.R.D. 201, 202 (D.D.C. 2000)); *see also Trump v. Comm. on Ways & Means, U.S. House of Representatives*, 391 F. Supp. 3d 93, 97 (D.D.C. 2019) ("Scrupulous adherence to Local Rule 40.5 is important 'to avoid any appearance of judge-shopping or favoritism in assignments and to assure the public that cases were assigned on an impartial and neutral basis.'" (quoting *Tripp*, 196 F.R.D. at 202)).

In the "'interest of judicial economy,'" however, "Local Civil Rule 40.5 creates an exception for 'related cases.'" *Dakota Rural Action*, 2019 WL 1440134, at *1 (quoting *Singh*, 187

F. Supp. 3d at 155).  Under that rule, the plaintiffs may complete a form, to be provided to the Clerk of the Court and served on the defendants with the complaint, designating the action as related to an earlier-filed and still pending action.  LCvR 40.5(b)(2).

Civil cases are "related when the earliest is still pending on the merits in the District Court and they (i) relate to common property, or (ii) involve common issues of fact, or (iii) grow out of the same event or transaction or (iv) involve the validity or infringement of the same patent."  LCvR 40.5(a)(3).  "The principle behind the related case rule is that in certain instances, the strong presumption of random case assignment is outweighed by the interests of judicial efficiency in narrow circumstances, such as when virtually identical and highly overlapping issues of fact are likely to be resolved in two cases."  *Comm. on Judiciary v. McGahn*, 391 F. Supp. 3d 116, 121 (D.D.C. 2019).  "The party requesting the related-case designation bears the burden of showing that the cases are related under Local Civil Rule 40.5."  *Singh*, 187 F. Supp. 3d at 155.  "The burden on the party claiming relation is heavy as random assignment of cases is essential to the public's confidence in an impartial judiciary."  *Dakota Rural Action*, 2019 WL 1440134, at *1; *accord Comm. on Ways & Means*, 391 F. Supp. 3d at 95 (same).  "Deviating from that foundational principle is appropriate only if the relationship between the two cases is certain."  *Dakota Rural Action*, 2019 WL 1440134, at *1.

"The judge to whom a case is assigned resolves any objection to a related-case designation."  *Id.* (citing *Singh*, 187 F. Supp. 3d at 155, and D.D.C. LCvR 40.5(c)(1)).  "If the objection is sustained, the judge may transfer the later-filed case to the Calendar and Case Management Committee, which then decides if good cause[] exists for the transfer and thus random reassignment of the case."  *Id.* (citing D.D.C. LCvR 40.5(c)(1)).

4

## II.   DISCUSSION

The only basis for relation to *American Oversight* asserted in plaintiffs' Notice of Related case was that the two cases supposedly "involve common issues of fact."  *See* Pls.' Not. of Related Case (checking the "common issues of fact" box).  Belatedly, and somewhat surprisingly, plaintiffs now assert in response to defendants' noticed objection to relating the two cases, that they "mistakenly selected only the box for 'involves common issues of fact,' and not also the box for 'relates to common property,'" and proceed to rely first and most heavily in their opposition on the contention that these cases involve as "common property" the records sought by the plaintiff in *American Oversight* (the "*American Oversight* Records").  Pls.' Opp'n at 1-2 & n.1.[1]

Neither of these prongs in D.D.C. Local Civil Rule 40.5(a)(3)(i) and (ii) provides a basis for relation.

### A.  Common Issues of Fact

As support for their assertion that these two cases involve "common issues of fact," plaintiffs explain that in *American Oversight*, the government argued, in opposition to a motion for a protective order preventing the destruction of at-issue records during the pendency of that case, that DOGE is "subject to, and preserving records consistent with, the PRA," and that DOGE therefore is not subject to FOIA.  Compl. ¶ 135; *see also* Defs.' Opp'n to Pls.' Mot. for Preservation Order at 6, *Am. Oversight*, No. 25-cv-409 (BAH) (filed Mar. 27, 2025), ECF No. 13 ("[DOGE] is subject to the Presidential Records Act, not to FOIA . . . .").  In plaintiffs' view, therefore, if defendants in *American Oversight* prevail by obtaining judicial rulings that the *American*

---

[1]   Certainly, these cases do not "grow out of the same event or transaction," LCvR 40.5(a)(3)(iii), and plaintiffs do not contend otherwise and do not raise this prong, even belatedly, as a basis for relating the cases.  The instant case was prompted by issuance of the OLC Opinion on April 1, 2026, which advises the President that the PRA is unconstitutional, Compl. ¶ 87, whereas *American Oversight* arises out of a wholly distinct set of FOIA requests for disclosure of records to DOGE and OMB, *Am. Oversight* FAC.

*Oversight* defendants are not bound by FOIA but only by the PRA, these defendants will then be free to destroy the requested records at issue in *American Oversight* due to the OLC Opinion, unless plaintiffs obtain the relief sought in this case—namely, an injunction prohibiting the destruction of records subject to the PRA. Compl. ¶ 135. Additionally, plaintiffs claim that "how [DOGE] is, in fact, handling the [*American Oversight* Records]" and "whether any of the [*American Oversight* Records] have been destroyed or mishandled" are common factual questions between the two cases. Pls.' Opp'n at 6.

For at least two reasons, this is not enough to support relation of the cases. First, "these cases involve different claims." *Comm. on Ways & Means*, 391 F. Supp. 3d at 96. *American Oversight* involves FOIA claims and, as such, requests relief compelling DOGE and OMB to "produce, within twenty days of the Court's order, any and all non-exempt records responsive to American Oversight's FOIA Requests." *Am. Oversight* FAC ¶ 1, p.36 (Requested Relief). By contrast, the instant case involves no similar claim to vindicate and enforce statutory disclosure of records under the FOIA, nor does the instant case have any specific focus on DOGE or OMB, but rather asserts claims under the "the constitutional separation of powers," the Presidential Records Act, and the Administrative Procedure Act, Compl. ¶ 6, and seeks to "ensure the President and his administration abide by the recordkeeping obligations required by federal law," notwithstanding OLC's opinion that the PRA is unconstitutional, *id.* ¶ 5. These widely divergent claims necessarily make different facts material to resolving the claims at issue in the two cases. For instance, the facts material to resolving the FOIA claims at issue in *American Oversight*—if such claims turn out to be viable because DOGE is found to be subject to the FOIA—are fairly straightforward, namely, to determine whether the agency performed an adequate search for responsive records and appropriately applied the FOIA in withholding any records, in whole or in part. The instant case

presents what appears to be purely legal questions as to the constitutionality of the PRA, involving none of the presentation of factual issues necessary to resolving the FOIA claims at issue in *American Oversight*. The sole factual issue in common pointed to by plaintiffs—how DOGE has handled its records, Pls.' Opp'n at 6—involves a miniscule fraction of the records potentially at issue in the instant case, and it is far from clear that the question of how DOGE specifically handled these records would have any bearing on the constitutional legal issues raised here. Similarly, while the extant dispute in *American Oversight* may supply facts to support standing and concomitant subject matter jurisdiction in the instant case, such possible jurisdictional facts do not make the "issues of fact" material to resolving the specific asserted claims "common" between the two cases.

Consequently, plaintiffs have not successfully identified common factual questions that must be decided in *American Oversight* and the instant case. *See generally* Pls.' Opp'n; *see also Millard v. Gov't of Dist. of Columbia*, No. 22-cv-2672 (RCL), 2023 WL 2301927, *2 (D.D.C. Mar. 1, 2023) ("The common issues of fact test largely revolves around whether 'the Court will be required to make similar factual determinations in both cases.'" (quoting *Singh*, 187 F. Supp. 3d at 156)). In short, the cases are not related under the "common issues of fact" prong of Local Civil Rule 40.5(a)(3).

This conclusion comports with prior decisions on the related case rule, which have also looked to the claims alleged to assess the similarity of the "issues of fact" involved in each case. *See, e.g.*, *Boyd v. Farrin*, No. 12-cv-1893 (PLF), 2012 WL 6106415, at *2 (D.D.C. Dec. 10, 2012) (concluding two cases did not "involve common issues of fact" because one involved a "cause of action rooted in the Equal Credit Opportunity Act," while another was "a common law diversity action" for "breach of contract and fiduciary duty," and thus raised different issues of

fact); *cf. Singh*, 187 F. Supp. 3d at 156 (concluding relation of two cases was proper because "the plaintiffs in both cases at issue . . . challenge the same Department of Defense and Army regulations governing requests for religious accommodations on the same grounds"); *Autumn Journey Hospice, Inc. v. Sebelius*, 753 F. Supp. 2d 135, 140 (D.D.C. 2010) ("[T]here is substantial overlap in both the factual underpinning and the legal matters in dispute in each of these hospice cap cases.").

Second, though plaintiffs argue that disposition of this case may have practical, real-world consequences with respect to the availability or potential destruction of records responsive to the FOIA requests at issue in *American Oversight*, *see* Compl. ¶ 135; Pls.' Opp'n at 2, this connection is too attenuated to demonstrate "common issues of fact" material to resolving the different claims at issue in the two cases. This purported "hook" between the two cases is weaker than it appears. *See Lucas v. Barreto*, No. 04-cv-1262 (EGS), 2005 WL 607923, at *3 (D.D.C. Mar. 16, 2005) (finding that two cases with disparate claims were not related even though plaintiffs pointed to a "hook" between them). Specifically, plaintiffs raise the alarm that "[s]ince [the *American Oversight*] Defendants now view themselves as not bound by the PRA, if [*American Oversight*] is resolved with a finding that . . . [the *American Oversight* defendants] are subject to the PRA rather than FOIA, then (without judicial relief in *this* case) Defendants may destroy these records," causing "irreparable harm" to American Oversight. Compl. ¶ 135 (emphasis in original). Plaintiffs overlook that the defendants in *American Oversight* are currently prohibited by a protective order from destroying any documents at issue in that case, *see* Minute Order (Apr. 2, 2025), *Am. Oversight*, No. 25-cv-409 (BAH), and that case is partially stayed as to DOGE pending a determination by the D.C. Circuit whether DOGE is an agency subject to FOIA, *see* Minute Order (Sept. 10, 2025), *Am. Oversight*, No. 25-cv-409 (BAH) (staying the case); Minute Order (Apr. 8,

2026), *Am. Oversight*, No. 25-cv-409 (BAH) (permitting case to proceed as to OMB, but allowing the stay to remain in place as to DOGE).  Thus, if anything, the records at issue in *American Oversight* are *less* likely than any other records potentially subject to the PRA to be affected by the outcome of this case, since even if plaintiffs' requested preliminary injunction in the instant case were denied, the records at issue in *American Oversight* would remain protected from destruction.

### B. Common Property

Despite checking only the box for "common issues of fact" on their Notice of Related Case, *see* Not. of Related Case, plaintiffs shift their focus from that basis for relation to the provision of Local Civil Rule 40.5(a)(3)(i) that allows direct assignment to a particular Judge based on an earlier filed case that "relate[s] to common property," arguing that "a discrete set of records of [DOGE]," the *American Oversight* Records, is "common property" "for which there are common factual questions," *see* Pls.' Opp'n at 1.  This prong is infrequently relied upon, and thus interpretation of the phrase "common property" as used in Local Rule 40.5(3)(a)(i) is sparse.  *See J&K Prods., LLC v. SBA*, 589 F. Supp. 3d 95, 99 (D.D.C. 2022) (making point that "the Court is unaware of any precedent (and the parties have pointed to none)" interpreting this prong).  Based on the precedent available, this last-ditch effort by plaintiffs is even less persuasive than their argument that the cases involve "common issues of fact."  *See* Pls.' Opp'n at 2 (citing D.D.C. LCvR 40.5(a)(3)(i)).

While government records are the "property" of the United States, 44 U.S.C. § 2202 (presidential records); *id.* § 3101 (agency records), neither of these cases relate to the *American Oversight* Records *as property*.  To reprise, the instant case seeks declaratory judgment and an injunction governing the handling of those (and many other) records, Compl. at 45, and *American Oversight* seeks disclosure of those records pursuant to FOIA, *Am. Oversight* FAC ¶ 4.  Contrary to plaintiffs' assertions, "it is far from clear that" government records in which plaintiffs assert no

ownership interest but seek to have preserved or disclosed are "the kind of 'common property' contemplated by Local [Civil] Rule 40.5(a)(3)." *J&K Prods.*, 589 F. Supp. 3d at 99 (quoting D.D.C. LCvR 40.5(a)(3)). "[T]his is not a situation where the Court has exercised *in rem* jurisdiction over a single piece of property that is the subject of other lawsuits pending in this district," and is attempting to determine who has a property interest in that *res*. *Id.* Rather, these cases involve questions about the government's obligations to preserve and disclose documents and do not present the risk of conflicting decisions as to the property's ownership.

Nor do these two cases plaintiffs seek to treat as related present the kinds of entanglement and conflicting judgments the "common property" prong is intended to prevent. *J&K Productions* analogized the "common property" prong of D.D.C. Local Civil Rule 40.5(a)(3)(i) to Federal Rules of Civil Procedure 19(a) and 22(a), which allow joinder of cases when failure to join would create a "substantial risk of incurring double, multiple, or otherwise inconsistent obligations," and are sometimes used to join cases involving common property over which the court has asserted *in rem* jurisdiction. *Id.* (citing FED. R. CIV. P. 19(a), 22(a)). This Local Rule could also be analogized to Federal Rule of Civil Procedure 42, which governs consolidation of cases when they involve "common question[s] of law or fact," and is similarly sometimes used when common property is at issue. FED. R. CIV. P. 42(a); *see, e.g.*, *Campuzano v. United States*, Nos. 24-cv-1652 & 24-cv-2714 (LLA), 2024 WL 5331861, *2 (D.D.C. Oct. 31, 2024) (finding that the "relate to common property" prong of LCvR 40.5(a)(3)(i) was satisfied since related case, like earlier-filed case, concerns the same $4.3 billion from a judgment, and further that both cases "challenge the federal government's decision to not transfer that money into the Victims Fund," leading Court to consolidate both cases for dispositive motion briefing).

10

Contrary to plaintiffs' assertions, Pls.' Opp'n at 1, these cases run no such risk.  While possibly true that if plaintiffs lose in both cases "[t]he combined result would be that the [*American Oversight* Records] are not subject to *any* records law, and [DOGE] would be free to destroy" them, Pls.' Opp'n at 4, this is not a "double" or "inconsistent" obligation of the kind that can arise in *in rem* proceedings, but rather an outcome with clear obligations, or lack thereof, for the parties, no matter how unfavorable to plaintiffs that outcome might be.  In other words, the question whether the PRA is constitutional in general is entirely separate from the question whether the PRA, if constitutional, applies to records held by DOGE specifically.  Plaintiffs' belief that relating these cases would "help protect against the outcome of one case prejudicing the rights of the plaintiffs in the other case," *id.* at 4, is neither a listed basis for relation, nor should it be.  Frequently the outcome of one case affects other cases and the interests of the parties therein; this is simply a fact of litigation.  The "common property" prong of Local Civil Rule 40.5(a)(3) seeks to prevent *conflicting* obligations with regard to specific property, a possibility not in play here.  Thus, plaintiffs' argument that the cases are related because they involve common property is unavailing.

## C.  Potential for Judge-Shopping

Finally, allowing relation in this case, under either of the proffered prongs of Local Civil Rule 40.5(a)(3) urged by plaintiffs, raises serious concern of presenting an opportunity for manipulation and evasion of the ordinary rule of random assignment because plaintiffs' arguments for relation could be applied to multiple other cases pending before other Judges of this Court.  For instance, *Project on Government Oversight v. Trump*, No. 25-cv-527 (JEB) (D.D.C. filed Feb. 21, 2025), in which the President, DOGE, and the DOGE Administrator are defendants, "challeng[es] as contrary to law Defendants' recordkeeping policies and practices that treat federal agency records of [DOGE] as presidential records under the PRA and beyond the scope of the Freedom

of Information Act." Am. Compl. ¶ 1, *Project on Gov't Oversight*, No. 25-cv-527 (JEB) (filed May 9, 2026), ECF No. 16. Similarly, *American Oversight v. Department of Government Efficiency*, No. 25-cv-1251 (RC) (D.D.C. filed Apr. 23, 2025), involves FOIA requests directed at DOGE, Am. Compl. ¶ 6, *Am. Oversight*, No. 25-cv-1251 (RC) (filed July 22, 2025), ECF No. 14, and defendants in that case have lodged the same defense as in the identically captioned *American Oversight* case pending before the undersigned for which plaintiffs seek relation with the instant case: that DOGE "considers themselves subject to the PRA," Defs.' Mot. to Dismiss at 21 n.6, *Am. Oversight*, No. 25-cv-1251 (RC) (filed July 1, 2025), ECF No. 12. Plaintiffs' proffered reasons for relating this case to *American Oversight*—*i.e.*, that since defendants are treating records as subject to the PRA instead of FOIA, relief in this case will prevent the destruction of records held by those defendants, and that both cases involve, in some sense, an overlapping set of records— apply with equal force to Civil Case Nos. 25-cv-527 and 25-cv-1251, both assigned to different Judges. Thus, if plaintiffs could use these tenuous connections as grounds for relation, plaintiffs could choose between the three Judges sitting on these three cases, rather than being subject to the random assignment system. That result is neither permitted nor acceptable.

\* \* \*

For these reasons, relation is not appropriate here, and this case must be randomly reassigned to a Judge of this Court. No common issue of fact is discernible between this case and *American Oversight*, and any purported connection between the two is far more attenuated than what is required to justify relation under any prong of D.D.C. Local Civil Rule 40.5(a)(3). Therefore, allowing relation here would sanction the kind of judge-shopping that the random assignment system is designed to prevent. In sum, plaintiffs have not met the "heavy" "burden" of justifying relation. *See Dakota Rural Action*, 2019 WL 1440134, at \*1.

### III.   ORDER

For the reasons set forth above, consistent with Local Civil Rule 40.5(c)(1), defendants' objection to plaintiffs' notice of related case, ECF No. 10, is **SUSTAINED**.  This case shall be transferred to the Calendar and Case Management Committee for prompt random reassignment.

**SO ORDERED.**

Date: April 15, 2026

                    _____

**BERYL A. HOWELL**
United States District Judge