**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AMERICAN HISTORICAL ASSOCIATION, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>DONALD TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>　　　　　Defendants. | Case No. 1:26-cv-01169-JDB |

**DEFENDANTS' MOTION TO STAY
DISTRICT COURT PROCEEDINGS PENDING APPEAL**

**INTRODUCTION**

This Court issued a preliminary injunction against the Government and the Government has appealed. Common sense dictates that the next step is to stay district court proceedings pending appeal. "Litigating essentially the same issues in two separate forums is not in the interest of judicial economy or in the parties' best interests." *InfraRed Env't Infrastructure GP Ltd. v. Kingdom of Spain*, 2021 WL 2665406, at *5 (D.D.C. June 29, 2021) (Bates, J.) (citation omitted). In the related case pending before this Court, *Freedom of the Press Foundation v. Trump*, No. 1:26-cv-1402-JDB (D.D.C.), the plaintiffs have consented to a stay of proceedings pending appeal, underscoring that a temporary pause is the sensible course. The D.C. Circuit recently agreed to expedite the appeal, which will be fully briefed in three months.

Plaintiffs oppose a stay because they did not get everything they asked for. Under the circumstances, that is not a good reason for simultaneous litigation in this Court and the Court of Appeals. The Government is not moving to stay the injunction, which is the predominant factor in determining whether the issue must be promptly litigated on the merits. The conduct "that form[s] the heart of Plaintiffs' objections [is] currently—and will remain—enjoined." *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Human Servs.*, 2021 WL 4033072, at *2 (D.D.C. Sep. 3, 2021) (granting stay). And Plaintiffs' claims of ongoing prejudice seek to relitigate the few aspects of the Court's preliminary injunction order on which Plaintiffs did not succeed. The Court can and should discount those predictions of harm, as it did three weeks ago. Nor should a stay be denied on the ground that Plaintiffs may seek to expand the scope of this lawsuit by adding new claims far afield of the Complaint.

In short, a stay of district court proceedings pending appeal will advance judicial economy and will not prejudice Plaintiffs in any meaningful way.

1

## BACKGROUND

### I.    Factual Background

On April 1, 2026, the Department of Justice Office of Legal Counsel (DOJ and OLC) issued an opinion saying that the Presidential Records Act (PRA) was unconstitutional. Compl. ¶ 87, ECF No. 1. On April 6, 2026, Plaintiffs American Historical Association and American Oversight filed this action. ECF No. 1. On April 14, 2026, Plaintiffs moved for a preliminary injunction (PI). ECF No. 13. Another set of plaintiffs filed a related case and separately moved for a PI. *See Freedom of the Press Foundation v. Trump*, No. 1:26-cv-1402-JDB (D.D.C.). This Court held a consolidated PI motion hearing on May 13, 2026. *See* docket order of April 28, 2026; docket entry of May 13, 2026.

### II.    The Preliminary Injunction

On May 20, 2026, the Court issued preliminary injunctions in both cases based on its finding that the PRA was likely constitutional. Order, ECF No. 23; Mem. Op., ECF No. 24 (PI Op.). The Court ordered the Executive Office of the President (EOP) Defendants to "[c]omply in full with the provisions of the Presidential Records Act, 44 U.S.C. §§ 2201-09[.]" ECF No. 23 ¶ 2(a). On May 28, 2026, the Government filed a notice of compliance with the PI orders, explaining that the White House Counsel's Office had emailed the Court's injunction order to "all EOP staff" with instructions to "comply with the Presidential Records Act." ECF No. 25 ¶¶ 1-2.

In this action, the Court exempted from its order the President, the Vice President, the National Archives and Records Administration (NARA) and the acting Archivist, and DOJ and the acting Attorney General. ECF No. 23 ¶ 2.

As for NARA, the Court explained that "plaintiffs have likely not established injury in fact with respect to NARA or DOJ." PI Op. at 18. The Court credited NARA's declaration that

"'NARA is continuing to preserve' presidential records in its custody, including from President Trump's first term," and that "NARA has been processing FOIA requests for presidential records since the OLC opinion and 'plans to continue' doing so." *Id.* at 18-19 (quoting Decl. of Kate Dillon McClure ¶ 4, ECF No. 19-3).

As for DOJ, the Court explained that OLC could not injure Plaintiffs merely by the fact of issuing a legal opinion, as "DOJ … does not have any duties under the [PRA]." *Id.* at 20. Rather, Plaintiffs' injuries were traceable to EOP. *See id.*

As for the President, the Court outlined the preexisting caselaw warning that "[a] court[] generally may not enjoin the President in the performance of his official duties." *Id.* at 51 (quoting *Severino v. Biden*, 71 F.4th 1038, 1042 (D.C. Cir. 2023)) (internal citation and quotation marks omitted). Noting that Plaintiffs had encouraged the Court to, in the alternative, "'enjoin the President's subordinates'" in the EOP—themselves duty-bound under the PRA to preserve "records created by the President and transmitted or transferred to EOP staff"—the Court declined to enjoin the President. *Id.* at 52 (quoting Reply in Supp. of Plaintiffs' PI Motion at 25, ECF No. 22). The Court recognized that Plaintiffs had also sued President Trump in his personal capacity, but responded that with three years remaining in the President's second term, it was "premature to enjoin President Trump in his personal capacity from violating the [PRA] after he leaves office[,]" as "it is far less clear what President Trump will do with respect to his obligations under the Act when leaving office." *Id.* at 53 n.21.

As for the Vice President, the Court decided there was no need to enjoin him either. Although there was less caselaw on when, if ever, a court could enjoin the Vice President, the same principles applied: enjoining the Vice President's subordinates could "provide most of the preliminary relief that plaintiffs seek." *Id.* at 53.

3

### III.   After the Preliminary Injunction

On May 26, 2026, the Court ordered the parties to meet and confer on how to address "further proceedings." *See* docket order of May 26, 2026.

On June 2, 2026, the Government noticed an appeal to the D.C. Circuit. ECF No. 26. The parties agreed to expedite appellate briefing, with the Government's reply brief due on September 9, 2026. *See* Consent Mot. to Expedite Briefing Schedule and Oral Arg., *American Historical Ass'n v. Trump*, No. 26-5185 (D.C. Cir.), Doc. No. 2176983 (June 5, 2026), attached as **Exhibit A**. On June 9, 2026, the Court of Appeals granted the motion. Order, *American Historical Ass'n v. Trump*, No. 26-5185 (D.C. Cir.), Doc. No. 2177685, attached as **Exhibit B**.

During the meet and confer on district court proceedings, the Government proposed staying the district court cases pending appeal. The *Freedom of the Press Foundation* plaintiffs agreed to a stay of "all proceedings," except with respect to compliance with or enforcement of the preliminary injunction. *See* Joint Status Report, *Freedom of the Press Found. v. Trump*, No. 1:26-cv-1402 (D.D.C.), ECF No. 20 (filed June 4, 2026). The *American Historical Association* plaintiffs opposed a stay. *See* Joint Status Report, ECF No. 29 (filed June 4, 2026) (JSR). The Court ordered the parties in *American Historical Association* to formally brief the issue of a stay. *See* docket order of June 5, 2026.

### ARGUMENT

A district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Belize Soc. Dev. Ltd. v. Gov't of Belize*,

668 F.3d 724, 731 (D.C. Cir. 2012) (when a stay is issued "pursuant to the district court's inherent authority in the interest of judicial economy, 'the applicable jurisprudence appears in [*Landis*]'") (citations omitted). When "exercising this power, a court must 'weigh competing interests and maintain an even balance' between them." *Hulley Enters. Ltd. v. Russian Fed'n*, 211 F. Supp. 3d 269, 280 (D.D.C. 2016) (quoting *Landis*, 299 U.S. at 255). As such, courts consider three factors on a motion for stay: "(1) harm to the nonmoving party if a stay does issue; (2) the moving party's need for a stay—that is, the harm to the moving party if a stay does not issue; and (3) whether a stay would promote efficient use of the court's resources." *National PFAS Contamination Coalition v. U.S. EPA*, 2023 WL 22078, at *3 (D.D.C. Jan. 3, 2023) (Bates, J.) (citation omitted).

Each of the relevant factors weighs in favor of a stay of proceedings here.

## I.    A STAY WILL PROMOTE JUDICIAL ECONOMY

### A.    Issues Core to the Complaint Will Shortly Be Resolved by the D.C. Circuit.

The D.C. Circuit's ruling, and any rulings by the Supreme Court, will provide dispositive guidance as to the claims against the EOP Defendants because the preliminary injunction rests on this Court's analysis of issues at the core of this litigation, including the constitutionality of the Presidential Records Act. Further litigation on these purely legal issues as to the EOP Defendants would be needlessly duplicative where this Court has already adjudicated them in a preliminary posture and where the Court of Appeals now has an opportunity to provide authoritative views.

That the Court denied a stay of the preliminary injunction is of no moment. Stays of district court proceedings pending appeal advance different goals than stays of preliminary injunctions pending appeal, so different factors apply. A motion to stay a preliminary injunction pending appeal of that same preliminary injunction may implicate the merits of the preliminary injunction. Thus, the stay applicant, among other things, must make "a strong showing that he is likely to succeed on the merits[.]" *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation omitted). By contrast,

a stay of district court proceedings is about convenience and economy. "The likelihood of success on the merits is not an independent factor under *Landis*, and therefore does not carry the same weight" when addressing a motion to stay of district court proceedings. *Kuang v. U.S. Dep't of Defense*, 2019 WL 1597495, at *6 (N.D. Cal. Apr. 15, 2019). The public interest is likewise relevant to *Nken* but not *Landis*. *See Asis Internet Servs. v. Active Response Group*, 2008 WL 4279695, at *4 (N.D. Cal. Sep. 16, 2008).

Under *Landis*' flexible approach to stays of district court proceedings, a pending appellate decision in the same case is a sufficient basis to grant a stay. The D.C. Circuit's ruling does not have to "settle every question of fact and law in suits by other [plaintiffs]," provided that "in all likelihood it will settle many and simplify them all." *Landis*, 299 U.S. at 256. The question is not whether the Court of Appeals is likely to *overturn* the preliminary injunction order, but whether it could decide important issues that may either "dispose of the case or significantly reshape the merits." *Kuang*, 2019 WL 1597495, at *6 ("[A]n appellate ruling that leaves in place a preliminary injunction may nonetheless resolve intermediate issues in a manner that simplifies further proceedings."). For example, the Court may stay the case if the Court of Appeals decision "may affect the parties' understanding of the scope of this case going forward, may reorient the parties' arguments, may catalyze a settlement of this matter, … *or* may resolve the issues raised in this lawsuit in their entirety." *IBT/HERE Emp. Representatives' Council v. Gate Gourmet Div. Americas*, 402 F. Supp. 2d 289, 293 (D.D.C. 2005) (emphasis added).

The same considerations weigh heavily in support of a stay here. The Court of Appeals' resolution of the Government's appeal will likely provide dispositive guidance in this case, including as to the constitutionality of the PRA. A stay is warranted even though this Court did not grant Plaintiffs' request for a preliminary injunction in all respects. Indeed, this fact *supports*

6

a stay, given this Court's conclusions that Plaintiffs lack standing to press their claims against NARA and DOJ and that they could not obtain preliminary injunctive relief against the President and Vice President. In *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Human Servs.*, 2021 WL 4033072 (D.D.C. Sep. 3, 2021), the district court partially enjoined an agency rule, and the plaintiffs protested that "they continue to be harmed by the portions of the challenged Rule that remain in effect." *Id.* at *2. The court correctly recognized that the plaintiffs were effectively seeking to relitigate the Court's previous decision "that Plaintiffs either lacked standing to challenge, or were unlikely to succeed on the merits of their challenges to," the operative provisions. *Id.* (citing the preliminary injunction opinion). As the court recognized, it would not be bound by its own preliminary determinations on a motion to dismiss or motion for summary judgment. But being realistic, the court's prior decisions were at the very least "persuasive" authority for its future decisions. *See id.* (quoting *Belbacha v. Bush*, 520 F.3d 452, 458 (D.C. Cir. 2008)). Thus, the court's denial of complete relief was not a basis to deny a stay; rather, it was a basis to grant one. *See id.* (explaining that its assessment was "relevant to the Court's balancing of its 'interests in judicial economy and any possible hardship to the parties'") (quoting *Center for Biological Diversity v. Ross*, 419 F. Supp. 3d 16, 20 (D.D.C. 2019)). The same reasoning applies here: it would be a waste of judicial resources to relitigate issues pending appeal where this Court has already determined that Plaintiffs lack standing or cannot obtain equitable relief.

### B.    Courts Often Stay District Court Proceedings Pending Appeal.

"Litigating essentially the same issues in two separate forums is not in the interest of judicial economy or in the parties' best interests." *InfraRed Env't Infrastructure GP Ltd. v. Kingdom of Spain*, 2021 WL 2665406, at *5 (D.D.C. June 29, 2021) (Bates, J.) (citation omitted). This case is already on appeal. That means without a stay, the parties will have to brief the same constitutional issues again in the District Court at the same time they are simultaneously briefing

these issues before the Court of Appeals. That makes little sense. When a party that receives a preliminary injunction appeals that injunction and seeks a stay of district court proceedings pending that appeal, the movant is plainly not seeking a stay "pending the resolution of unrelated legal proceedings." *National Digital Inclusion Alliance v. Trump*, 2026 WL 980757, at *1 (D.D.C. Apr. 13, 2026) (Bates, J.) (citation omitted). Rather, the Government seeks a stay pending the resolution of *the same* legal proceedings, in a tribunal whose decisions will bind this Court. "[B]ecause this stay does not involve a separate proceeding, there is no question that there is a sufficient 'degree of overlap' so that a stay will serve judicial economy.'" *Kuang*, 2019 WL 1597495, at *6 (citation omitted). And because the party opposing the stay may present its views to the Court of Appeals, the due process concerns *Landis* recognized do not apply. There is no concern that "a litigant in one cause [will] be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255.

Courts have repeatedly recognized that a stay of district court proceedings "to await a federal appellate decision that is likely to have a substantial or controlling effect on the claims and issues in the stayed case" is "at least a good, if not an excellent" reason to stay district court proceedings. *Miccosukee Tribe of Indians of Fla. v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1998 (11th Cir. 2009). *See, e.g.*, *Ready to Win v. Fed. Election Comm'n*, 2023 WL 10512144, at *2 (D.D.C. July 28, 2023); *Blumenthal v. Trump*, 2019 WL 3948478, at *3 (D.D.C. Aug. 21, 2019); *Philipp v. Federal Republic of Germany*, 253 F. Supp. 3d 84, 89 (D.D.C. 2017); *University of Colo. Health at Mem'l Hosp. v. Burwell*, 233 F. Supp. 3d 69, 88 (D.D.C. 2017); *Allina Health Servs. v. Sebelius*, 756 F. Supp. 2d 61, 71 (D.D.C. 2010).

Plaintiff argues that three courts have denied stays under certain circumstances, but those rulings are readily distinguishable. *Contra* JSR at 3-4. In *National Digital Inclusion Alliance*, this

Court denied the plaintiff's request to stay its own case pending the en banc D.C. Circuit's resolution of a different case that "raise[d] substantially different issues" about jurisdiction and the availability of a cause of action to challenge a grant termination, which were unnecessary to decide the core question of whether the statute at issue was constitutional. 2026 WL 980757, at *2. In *Harris v. Medical Transp. Mgmt., Inc.*, 2022 WL 1908822 (D.D.C. June 3, 2022), the court denied a stay pending appeal of class certification because the interlocutory appeal was not relevant to the merits. Rather, the case was going to "proceed to summary judgment on the [merits] questions, whether as a … class action … or as an action solely on behalf of named Plaintiffs"; and "'common evidence [was] likely to resolve' both questions." *Id.* at *2 (citation omitted). And in *DL v. District of Columbia*, 6 F. Supp. 3d 133 (D.D.C. 2014), the court likewise declined to stay discovery pending appeal of class certification. The court tied its ruling to the specific text and purpose of Rule 23(f). *See id.* at 135 (writing that Rule 23(f) was "drafted to avoid delay" and "contemplates that in most cases discovery (at the very least, merits discovery) will continue notwithstanding the pendency of an appeal of the class certification order") (citations omitted).

In short, judicial economy strongly favors a stay in this case, where the Court has already upheld the constitutionality of the PRA; ordered the EOP Defendants to comply "in full" with the PRA; and rejected Plaintiffs' claims against the remaining defendants not subject to the PI.

## II.   Continued Litigation in the District Court Will Prejudice Defendants.

Plaintiffs' proposals to take discovery and to brief the case a second time are inherently prejudicial. Ordinary litigation burdens do not support a stay, but the diversion of government resources to litigation "is not irrelevant." *PFAS*, 2023 WL 22078, at *5. And "neither this lawsuit, nor the discovery Plaintiffs seek is typical." *Kuang*, 2019 WL 1597495, at *5 (citation omitted). Presidents are not categorically immune from suit, but under *Landis*, the "high respect that is owed

to the office of the Chief Executive … should inform the conduct of the entire proceeding, including the timing and scope of discovery." *Clinton*, 520 U.S. at 706-07.

Plaintiffs have announced their intent to pursue intrusive and aggressive litigation directly against the President. They have previously asked the Court to order the President's subordinates to report on his actions—a request the Court called "unadministrable and overly intrusive." PI Op. at 52; Proposed Preliminary Injunction Order at 2, ECF No. 13-13. At the motion hearing, Plaintiffs previewed that "we may be coming back soon seeking a new preliminary injunction against" President Trump in his personal capacity. Transcript of PI Motion Hearing (Hrg. Tr.) at 129:5-9, attached as **Exhibit C**. And despite the Court's recognition of authority detailing that a current President may not be enjoined, *see* PI Op. at 51-52, Plaintiffs argued that "[a]n injunction against the former president would be okay, notwithstanding the fact that he is the current president," Ex. C at 129:13-15. Plaintiffs may also seek intrusive discovery from the White House, a weighty step that itself raises significant separation of powers issues counseling in favor of judicial restraint. *See Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 385, 390-91 (2004) (explaining that discovery directed against the Vice President "implicates the separation of powers" and the "special considerations" regarding the "Executive Branch's interests in maintaining the autonomy of its office" and the "confidentiality of its communications").

This Court has already signaled that in light of the caselaw on whether a court may enjoin the President in his official capacity, it will prudently avoid wading into that judicial thicket where it is reasonable to do so. PI Op. at 51-53; *cf. Clinton*, 520 U.S. at 706-07 (not reaching the question of a constitutional entitlement to a stay of trial because under *Landis*, "a stay of either the trial or discovery might be justified by considerations that do not require the recognition of any constitutional immunity"). The same considerations favor a stay here.

10

III.     **A Stay Will Not Harm Plaintiffs.**

A.     **The D.C. Circuit Expedited Appellate Briefing, and the Government Has Not Moved to Stay the Preliminary Injunction Pending Appeal.**

Critically, this Court has already denied (*sua sponte*) a stay of the preliminary injunction pending appeal and Defendants have not sought any stay from the Court of Appeals. When deciding whether to stay a case, the question is not the length of the delay, standing alone, but whether the delay is "a reasonable time in relation to the urgency of the claims presented to the court." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979) (stay pending parallel arbitration). Here, the most important issues in this case are frozen in place—to *Plaintiffs*' advantage—by the preliminary injunction. That the PI "will remain in place for the duration of the stay … weighs against a finding of harm to Plaintiffs." *Kuang*, 2019 WL 1597495, at *4.

Courts routinely grant stays under similar circumstances. *See, e.g.*, *Whitman-Walker*, 2021 WL 4033072, at *2 (finding that prejudice to plaintiffs from a stay of proceedings was minimal because conduct "that form[s] the heart of Plaintiffs' objections [is] currently—and will remain—enjoined"); Order, *NTEU v. Vought*, No. 1:25-cv-381-ABJ (D.D.C. filed Apr. 28, 2025), ECF No. 141 (staying motion to dismiss deadline pending appeal of preliminary injunction after the Court of Appeals lifted its partial stay of that preliminary injunction pending appeal); *Latta v. U.S. Dep't of Educ.*, 653 F. Supp. 3d 435, 440-41 (S.D. Ohio 2023) (no prejudice to Plaintiff from stay because challenged program "is currently enjoined"); Electronic Order, *Walker v. Azar*, No. 1:20-cv-2834-FB-VMS (E.D.N.Y. Nov. 2, 2020) (granting stay pending appeal of preliminary injunction and finding that the "possibility of further irreparable harm to the plaintiffs pending appeal is mitigated by the extant preliminary injunction"); *Washington v. Trump*, 2017 WL 2172020, at *4 (W.D. Wash. May 17, 2017) (finding that any prejudice to plaintiffs from stay would be "minimal—if there is any at all" in light of the preliminary injunctive relief already in

11

effect); *Hawai'i v. Trump*, 233 F. Supp. 3d 850, 853-54 (D. Haw. 2017); *Boardman v. Pac. Seafood Grp.*, 2015 WL 13744253, at *2 (D. Or. Aug. 6, 2015).

The truncated appellate timeline further supports a stay—especially when compared to the remaining decision points in this case. The Government's appeal of this Court's preliminary injunction "is not one where [Plaintiffs] are 'unable to predict a timeframe for completion.'" *PFAS*, 2023 WL 22078, at *4 (quoting *Garcia v. Credit One Bank, N.A.*, 2018 WL 11304605, at *2 (D. Nev. Oct. 3, 2018)). Briefing will close in early September, Ex. B, and the Government has requested the first available oral argument date, Ex. A at 3. In other words, the Court of Appeals briefing calendar is measured in months, far shorter than the likely timeline here given Plaintiffs' stated intentions. Most notably, as the Court recognized, NARA is not scheduled to take custody of the presidential records of President Trump's second term until 2029. PI Op. at 53 n.21; 44 U.S.C. § 2203(g)(1). Courts have granted stays under similar circumstances. *See, e.g.*, *Bascom Research LLC v. Facebook, Inc.*, 2014 WL 12795380, at *1 (N.D. Cal. Jan. 13, 2014) (staying case for "up to five months" pending Supreme Court ruling).

To make the stay look more burdensome, Plaintiffs skip ahead to Supreme Court review and warn that if the Court grants certiorari, it may not issue a decision until June 2028. *See* JSR at 4. But if the Supreme Court grants certiorari, that would be even greater reason for this Court to await that ruling. (And if the Supreme Court does not issue a decision until June 2028, that means the PRA will remain in force *through* June 2028 unless the Court of Appeals reverses the PI Order.) More generally, "the expedited timeline of appellate proceedings … indicates that any delay in this case pending resolution of that appeal will be reasonable in length. And if that does not turn out to be the case, any party may petition the Court to lift or partially lift the stay for good cause[.]" *Hawai'i*, 233 F. Supp. 3d at 854; *see generally Whitman-Walker*, 2021 WL 4033072 at *1

(courts retain inherent authority and discretion to lift stays when "circumstances have changed") (quoting *Marsh v. Johnson*, 263 F. Supp. 2d 49, 52 (D.D.C. 2003)).

### B.    Further Proceedings on Other Matters Not Subject to the Preliminary Injunction are Unnecessary Pending Appeal.

Plaintiffs' theories of prejudice based on the current complaint are speculative and implausible. *First*, the fact that Plaintiffs did not obtain an injunction against the President or the Vice President does not warrant proceeding to further litigation right now. To begin, this Court already held that injunctive relief on Plaintiffs' claims is not available against the President and Vice President. It need not blind itself to this ruling by permitting immediate relitigation of that purely legal issue. Moreover, any asserted prejudice is greatly diminished by the preliminary injunction Plaintiffs already obtained, which requires all EOP defendants to comply with the PRA *in its entirety*. The preliminary injunction against the President's subordinates—including some of the most senior officials in the White House—is sufficient to preserve Congress' core interests in enacting the PRA. Any other conclusion ignores the realities of government. Like any senior executive official, the President's and Vice President's records are generally handled by staff or stored on electronic systems maintained by staff, all of whom are subject to the injunction. Plaintiffs suggest that the injunction does not "bind any personal aides of the President and Vice President who are not Executive Office of the President employees," JSR at 5, but they identify no such aides, so that statement is a stab in the dark.

*Second*, Plaintiffs argue that absent an injunction, the President or Vice President might refuse to turn over Presidential and Vice Presidential records to NARA upon leaving office, or that they might take the corresponding action of "ordering NARA … to not take possession of any [such] records." *See id.* at 5-6. But there is no reason why that issue needs to be litigated today. As the Court has already explained, the turnover of records is not scheduled to happen until 2029,

44 U.S.C. § 2203(g)(1), and the appeal is set to be fully briefed by September 2026, PI Op. at 53 n.21. Viewed in light of the practical timelines in the case, a stay pending appeal is unlikely to prejudice Plaintiffs on this score. *See Leyva*, 593 F.2d at 864.

*Third*, Plaintiffs alternatively request to renew their claims against NARA, JSR at 5, but further litigation on that score "is unlikely to … provide Plaintiffs the relief they seek anytime soon," *see Whitman-Walker*, 2021 WL 4033072, at *2, or ever, for that matter. In its PI opinion, this Court determined that Plaintiffs likely lack standing to sue NARA (and DOJ). PI Op. at 18-20. The circumstances have not changed. Since Plaintiffs cannot connect their original claims against NARA to any actionable harm, a temporary delay in ultimate relief will not prejudice Plaintiffs as to those claims. And even assuming justiciability, this is not a case where "the parties before the district court could make arguments unlikely to be affected by whatever new authority might arise." *NDIA*, 2026 WL 980757, at *2 (citing *Landis*, 299 U.S. at 256). To the contrary, all of Plaintiffs' claims against NARA and DOJ (to the extent they are even justiciable) will be affected by the Court of Appeals' resolution of the issues on appeal. For example, Plaintiffs' claims against NARA and DOJ would fail on the merits if the Court of Appeals concludes that the PRA is unconstitutional. At a minimum, the issues will be narrowed or clarified by the appellate process.

*Finally*, to the extent Plaintiffs seek to inject new issues into this case, that is no basis to deny a stay. In the parties' joint status report, Plaintiffs indicated that they "may soon amend their complaint" to add claims against DOJ, NARA, and President Trump, targeted at requiring President Trump to return certain "records from the first Trump Administration that were seized from Mar-a-Lago and recently returned to President Trump in his personal capacity." JSR at 6. Those claims are far afield of the issues originally pleaded in the Complaint, which challenges OLC's opinion regarding the PRA's constitutionality and alleged EOP and NARA policies and

14

practices arising as a result of that opinion. And even if they arose from the same nucleus of operative facts, Plaintiffs' proposed claims would be futile. As this Court has observed, the PRA imposes no mandatory duty on NARA to take action against an alleged unlawful removal of Presidential records. PI. Op. at 19-20. Plaintiffs are free to file a new lawsuit if they believe there is a basis for claims regarding the disposition of particular alleged presidential records. But their attempt to transform this lawsuit entirely is no basis to avoid a commonsense stay of proceedings.

## CONCLUSION

The Court should stay the district court proceedings pending appeal of this Court's May 20, 2026 preliminary injunction order.

Dated: June 11, 2026                                 Respectfully submitted,

                                                     BRETT A. SHUMATE
                                                     Assistant Attorney General

                                                     ERIC J. HAMILTON
                                                     Deputy Assistant Attorney General

                                                     ELIZABETH J. SHAPIRO
                                                     Deputy Director

                                                     JOHN BAILEY
                                                     Counsel to the Assistant Attorney General

                                                     /s/ Winston Shi
                                                     JAMES R. POWERS (TX Bar No. 24092989)
                                                     Chief Litigation Counsel
                                                     WINSTON G. SHI (NY Bar No. 5747068)
                                                     Trial Attorney
                                                     United States Department of Justice
                                                     Civil Division, Federal Programs Branch
                                                     1100 L Street NW
                                                     Washington, DC 20005
                                                     Phone: 202-880-0387
                                                     Email: winston.g.shi@usdoj.gov

                                                     Counsel for the United States

15