**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AMERICAN HISTORICAL ASSOCIATION, AMERICAN OVERSIGHT, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD TRUMP, in his official capacity as President of the United States and in his personal capacity, *et al.*, <br><br> *Defendants*. | Case No. 26-cv-1169 |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
<u>MOTION TO STAY DISTRICT COURT PROCEEDINGS PENDING APPEAL</u>**

**INTRODUCTION**

Defendants seek an indefinite stay of these proceedings that could potentially last years. To justify such a significant departure from the ordinary course, the law imposes a demanding burden on a party seeking such a stay. Defendants must show that there is a "pressing need" for a stay, *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 731–32 (D.C. Cir. 2012), and if there is any "fair possibility" that the stay will prejudice the nonmoving party, they must "make out a clear case of hardship or inequity" that would warrant a stay, *Landis v. North Am. Co.,* 299 U.S. 248, 255 (1936).

Defendants have made no such showing here. Their motion rests almost entirely on the ordinary burdens of litigation that courts have consistently held are insufficient to justify a stay. Recognizing this, Defendants argue that a blanket stay is needed because Plaintiffs "may" seek intrusive discovery in the future. Mot. 10. But that speculative concern is no reason to issue an indefinite stay now. Plaintiffs seek only to proceed with their claims in the normal course. *If* Defendants' appeal is still pending by the time the parties enter discovery, *if* Plaintiffs seek and the Court grants more than minimal discovery, and *if* Defendants believe that the burdens of such discovery would impose a clear hardship on them, nothing prevents Defendants from seeking to stay discovery at that time. But Defendants' failure to identify a pressing need for a stay *now* is fatal to their motion.

Plaintiffs, on the other hand, would be significantly harmed by delaying final adjudication of their claims, which would jeopardize their ability to obtain relief by the end of the current Administration and needlessly postpone litigating claims that are unlikely to be addressed by the pending appeal. Nor would it be in the interest of judicial economy to freeze this litigation indefinitely at the pleadings stage while appellate proceedings play out over the course of months and potentially years.

The Court should deny Defendants' motion in full. If the Court were inclined to enter any stay, however, the Court should not stay any claims that are not at issue in the preliminary injunction appeal, including claims that may be raised in any amended complaint.

## BACKGROUND

The Office of Legal Counsel (OLC) issued its opinion declaring the Presidential Records Act unconstitutional on April 1, 2026, and Plaintiffs filed their complaint in this action five days later, on April 6. In moving for a preliminary injunction, Plaintiffs focused on the immediate issue of ensuring that Presidential records would not be lost or destroyed during the pendency of these proceedings. Plaintiffs did not seek a preliminary injunction with respect to all of their claims, such as their claims related to the National Archives and Records Administration's (NARA's) obligations to assume custody of Presidential records at the end of an administration or the President's obligations as a former President to preserve Presidential records in his custody and turn them over to NARA. Plaintiffs instead tailored their motion narrowly to ensure that Presidential records would continue to be preserved, notwithstanding White House Counsel guidance that staff were under no preservation obligation as a matter of law. While the injunction requires EOP staff to preserve Presidential records during the pendency of this case, the injunction necessarily does not address all of Plaintiffs' claims because Plaintiffs sought and were granted narrow preliminary relief in accordance with the scope of their motion.

In granting the preliminary injunction, the Court relied on the limited record before it, consisting mainly of the White House Counsel Office's guidance and declarations submitted by a NARA official and the Director of White House Information Technology. The parties have not yet engaged in any formal or informal discovery. In the declaration submitted by NARA, the agency represented that it was continuing to preserve Presidential records "in its custody," and

2

opposed a preliminary injunction on that basis. But it has become clear that this representation regarding documents in NARA's "custody" does not include records that the FBI had seized from President Trump's personal residence at Mar-a-Lago, which have been returned to the President in his "personal capacity." PI Hr'g Tr. 109:24–110:2.

Defendants have appealed the Court's preliminary injunction and sought to expedite briefing and oral argument. *See* Dkt. 31-2. Under the current schedule, Defendants' reply brief is due on September 9. *See* Dkt. 31-3. The D.C. Circuit has not yet set an oral argument date. Defendants now move to stay all district court proceedings indefinitely pending the "conclusion of appellate proceedings," which Defendants define as the latest of "(a) the expiration of the deadline to petition for certiorari . . . ; (b) if a party petitions for certiorari, the Supreme Court's denial of the petition; or (c) if the Supreme Court grants the petition, the Supreme Court's final disposition of the case." Proposed Order, Dkt. 31-1.

## ARGUMENT

In the "normal course," district court proceedings continue during the pendency of an appeal from a preliminary injunction. *Wrenn v. District of Columbia*, 179 F. Supp. 3d 135, 140–41 (D.D.C. 2016). The appeal "does not divest the district court of jurisdiction to proceed with the underlying action on the merits," *Escobar Molina v. DHS*, No. 25-cv-3417, 2026 WL 1256234, at *18 (D.D.C. May 7, 2026), and so the party seeking to stay district court proceedings "bears the burden of establishing its need" for a stay, *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

In considering a motion to stay proceedings, the court considers three factors: (1) "the moving party's need for a stay–that is, the harm to the moving party if a stay does not issue," (2) "harm to the nonmoving party if a stay does issue," and (3) "whether a stay would promote

3

efficient use of the court's resources." *Nat'l PFAS Contamination Coal. v. EPA*, No. CV 22-132, 2023 WL 22078, at *3 (D.D.C. Jan. 3, 2023).

Because a stay represents a "deviat[ion] from the normal course of the litigation process," *Wrenn*, 179 F. Supp. 3d at 140, "if there is even a fair possibility that the stay" will prejudice the nonmoving party, the party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward" with district court proceedings. *Landis,* 299 U.S. at 255. The burden is especially demanding where, as here, a stay would be of "indefinite duration," as the moving party must show a "pressing need" for a stay. *Belize*, 668 F.3d at 731–32.

## I.    Defendants Have Not Shown a "Pressing Need" Justifying a Stay

Defendants do not dispute that they must show a "pressing need" to justify their request for an indefinite stay. *Belize*, 668 F.3d at 731–32; *see* 6/4/26 JSR at 4, Dkt. 29 (noting this standard). Nor do they dispute that they must establish a "clear hardship" if there is even a "fair possibility" that a stay will prejudice Plaintiffs. *Landis*, 299 U.S. at 255.

Defendants do not come close to meeting that burden here. Defendants do not identify any concrete, non-speculative burden that they will face simply by having this litigation proceed in the normal course. Instead, Defendants' sole argument is that they will be prejudiced by having to brief issues that they have already briefed, and by having to engage in hypothetical discovery at some unspecified point in the future. *See* Mot. 9–10. But, as Defendants expressly acknowledge, "[o]rdinary litigation burdens do not support a stay." Mot. 9. Indeed, courts have repeatedly held that the burdens on which Defendants rely here categorically cannot establish a "pressing need" for a stay or a "clear hardship." *See, e.g.*, *Campaign Legal Ctr. v. 45Committee, Inc.*, No. 22-CV-01115 (APM), 2022 WL 3088595, at *1 (D.D.C. July 18, 2022) ("[T]he mere possibility of time and resource savings does not rise to the level of 'pressing need.'"); *Ctr. for*

*Biological Diversity v. Ross*, 419 F. Supp. 3d 16, 21 (D.D.C. 2019) ("[B]eing required to defend a suit, without more, does not constitute a clear case of hardship or inequity." (quotation omitted)); *Wrenn*, 179 F. Supp. 3d at 140 ("Plaintiffs' claims regarding the impact of further proceedings on their time and resources simply do not justify a pause in litigation, particularly because this argument is substantially based on Plaintiffs' speculation about the downstream effect of the D.C. Circuit's resolution of the interlocutory appeal."); *United States v. Honeywell Int'l, Inc.*, 20 F. Supp. 3d 129, 133 (D.D.C. 2013) (denying stay where "[t]he only hardship the government suggests is the time it will take for its witnesses to sit for depositions").

Unable to identify any concrete, legally relevant hardship to their interests at present in the case, Defendants speculate that a hardship may arise in the future because Plaintiffs "may . . . seek intrusive discovery from the White House." Mot. 10. But Plaintiffs have not yet sought any discovery, and so it would be premature for the Court to address whether the "high respect that is owed to the office of the Chief Executive" or "special considerations" concerning the confidentiality of Executive Branch communications warrant limiting or staying discovery that Plaintiffs may seek in the future. *See* Mot. 10 (citing *Clinton*, 520 U.S. at 706–07, and *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 385, 390–91 (2004))). Nor have Plaintiffs "announced [an] intent to pursue intrusive and aggressive litigation directly against the President." Mot. 10. While Plaintiffs are considering amending their complaint to add claims and allegations related to records from the first Trump administration, previously seized from Mar-a-Lago and returned to President Trump in his personal capacity, the mere amendment of the complaint in this regard would not impose any hardship on the government.

Defendants cite no case where a court found that the government had established a "pressing need" for a stay in similar circumstances. *See* Mot. 9–10. Defendants note that in

*PFAS*, this Court observed that it was "not irrelevant" that ongoing litigation might divert resources from EPA employees who were working on the proposed rule that the plaintiffs were challenging. 2023 WL 22078, at *5. But the Court was also clear that this was "not a 'hardship'" within the meaning of *Landis* and that the harm-to-defendants factor was therefore "neutral." *Id.*

Nor is the current posture of this case anything like the proceedings that were at issue in *Kuang v. DoD*, No. 18-cv-03698, 2019 WL 1597495, (N.D. Cal. Apr. 15, 2019). *See* Mot. 9. In *Kuang*, the plaintiffs had already served "discovery into documents connected to sensitive elements of military background investigations," anticipated "imminent discovery disputes regarding these and other materials," and indicated an intent to "depose various DoD officials." *Id.* at *5. Because the plaintiffs' requests "implicate[d] sensitive areas of military policy in which courts must tread more carefully" and it was possible that "a higher court will conclude that the [challenged agency action] is unreviewable," the court held that in "th[o]se specific circumstances," DoD had established a hardship warranting a stay. *Id.*

Defendants cite nothing like that here. The only burden they will face in the coming months is potentially preparing a motion to dismiss and/or an answer. If the D.C. Circuit acts as expeditiously as Defendants expect, those may be the only burdens the government faces during the pendency of the appeal. And regardless of the course of appellate proceedings, if at any point Plaintiffs seek discovery that Defendants believe is overly intrusive, Defendants could at that point seek a protective order or, if necessary, move to stay discovery. But the purely hypothetical possibility that Plaintiffs "may" seek some unspecified, supposedly intrusive discovery months in the future does not establish a "pressing need" to halt all proceedings in this case now.

Because Defendants *must* establish such a need to secure a stay of indefinite duration, *Belize*, 668 F.3d at 731–32, Defendants' failure to do so is fatal to their motion.

6

## II.    Plaintiffs Would Be Prejudiced by a Stay

Plaintiffs, by contrast, would be substantially prejudiced by a stay. Defendants' requested stay would be lengthy, potentially lasting years between D.C. Circuit and Supreme Court proceedings. Briefing in the D.C. Circuit is not set to close until September 9, 2026, and the court noted that the case would be set for argument but without any mention of expediting the argument. *See* Dkt. 31-3. Thus, the D.C. Circuit will likely not issue its decision until 6 to 12 months from now, likely stretching into 2027. *See, e.g.*, *Naz v. Wright*, No. 23-5237, 2026 WL 1657113 (D.C. Cir. June 9, 2026) (decision issued 17 months after argument); *Talbott v. United States*, 176 F.4th 720 (D.C. Cir. 2026) (decision issued 4 months after argument in appeal from preliminary injunction).

Then there are potential Supreme Court proceedings, as Defendants make clear they will seek Supreme Court review if they do not prevail at the D.C. Circuit. *See* Mot. 12. Defendants do not deny that such review would mean that their requested stay would last until at least late 2027 and possibly as late as June 2028. *See United Farm Workers v. Noem*, No. 1:25-CV-00246, 2026 WL 185064, at *15 (E.D. Cal. Jan. 25, 2026) (court would not presume that a stay pending appeal would be "short in duration" where oral argument was not likely to take place for another three months). Under any foreseeable timeline for Defendants' appeal, the delay and prejudice to Plaintiffs will be significant.

Indeed, a stay would jeopardize Plaintiffs' ability to obtain final judgment sufficiently in advance of the end of this Administration (or in advance of it at all). Plaintiffs, "like all litigants, . . . have a substantial interest in obtaining a prompt adjudication of their claims." *Id.*; *see also, e.g.*, *FemHealth USA, Inc. v. Williams*, 640 F. Supp. 3d 809, 813 (M.D. Tenn. 2022) (denying motion to stay proceedings pending appeal of preliminary injunction because "Plaintiff has an interest in timely adjudication of its claims"). If a stay were not lifted until late 2027 or

7

beyond, the parties would have only a matter of months to amend the complaint, resolve any motion to dismiss, engage in any discovery, and then brief and resolve a motion for summary judgment before the next Presidential election and transition. It is in the interest of all parties—and the public—that any final judgment be entered well in advance of the next Presidential transition, including to allow sufficient time for non-emergency appeals from a final judgment. *See, e.g.*, *California v. Azar*, 911 F.3d 558, 583 (9th Cir. 2018) ("We have repeatedly admonished district courts not to delay trial preparation to await an interim ruling on a preliminary injunction."); *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 673 (9th Cir. 1988) (rather than "delay all proceedings during the pendency of an appeal from an order granting a preliminary injunction," the parties "should have sought a rapid resolution of the legal issues presented in th[e] case").

Moreover, although the Court's preliminary injunction helps to ensure that the records of staff will be preserved while this case proceeds in the district court, "it does not follow . . . that Plaintiffs will suffer *no* harm if a stay is imposed." *United Farm Workers*, 2026 WL 185064, at *15. As noted, the preliminary injunction is limited and does not address all of Plaintiffs' claims. *See id.* at *14–15 (holding that there was "fair possibility" that stay would harm plaintiffs under *Landis* in part because preliminary injunction did not address all of Plaintiffs' claims). For example, Plaintiffs did not seek a preliminary injunction against the President in his personal capacity, including with respect to records that he is presently retaining from his first administration. Plaintiffs also did not seek an injunction specifically targeted at the issue of disposal of records at the end of the current administration, including all of the parties' obligations to ensure that NARA—and not the President in his personal capacity—"assume[s] responsibility for the custody, control, and preservation of, and access to" a President's records

8

"upon the conclusion of a President's term of office." 44 U.S.C. § 2203(g)(1). Relatedly, although the Court found that Plaintiffs did not meet their burden to establish standing against NARA for the claims at issue at the preliminary injunction stage, Plaintiffs at minimum have plausibly alleged that NARA has adopted OLC's conclusion that the PRA is unconstitutional and non-binding (Defendants in fact implicitly admitted as much in prior briefing), and Plaintiffs should have the opportunity to pursue various forms of relief against NARA to prevent NARA's adoption of this legal position from injuring Plaintiffs. *See Am. Hist. Ass'n v. Peterson*, 876 F. Supp. 1300, 1309 (D.D.C. 1995).

Because Plaintiffs focused on the urgent issue of ensuring that Presidential records would not be lost or destroyed, their motion for a *preliminary* injunction—and the Court's resulting order—was necessarily more limited than the *final* judgment that Plaintiffs would seek at the conclusion of this case. The government is wrong that Plaintiffs oppose a stay "because they did not get everything that they asked for." Mot. 1. Plaintiffs oppose a stay because this case presents questions of enormous national import that deserve to be addressed in an expeditious and deliberate manner on a complete record, not to relitigate issues that this Court has already addressed.

In all events, Plaintiffs would be prejudiced by a stay because Plaintiffs may soon amend their complaint to add new allegations and claims related to recent revelations that Defendants, and in particular DOJ, returned records that were seized from Mar-a-Lago to President Trump in his "personal capacity," *see* PI Hr'g Tr. 109:24–110:2, and that NARA is making no efforts to collect or preserve these records. Plaintiffs are considering  adding factual allegations regarding these developments and additional causes of action against DOJ, NARA, and the United States for unlawful final agency actions in returning the records, and against President Trump in his

9

personal capacity as a necessary defendant for obtaining relief regarding these records and potentially under common law causes of action. *See United States v. Navarro*, No. 23-5062, 2024 WL 1364354, at *2 (D.C. Cir. Apr. 1, 2024), *cert. denied*, 145 S. Ct. 988 (2024) (holding there are "common law remedies" against persons who unlawfully take Presidential records with them). The current preliminary injunction does not address these records from the first Trump administration, and the outcome of Defendants' appeal is unlikely to bear on these records or Plaintiffs' claims related to them. There is no reason to delay the filing of an amended complaint while an appeal plays out that will not likely affect the new claims.

And even though the appeal will not likely affect such claims (because the preliminary injunction does not address them), Defendants are wrong to suggest that the claims would be "far afield of the issues originally pleaded in the Complaint." Mot. 14. "This case is about the preservation of records that document our nation's history, and whether the American people are able to access and learn from that history." Compl. ¶ 1. Plaintiffs brought this case immediately after OLC issued its opinion because they reasonably feared that important Presidential records—including from the first Trump administration—were at risk of imminent loss or destruction. Plaintiffs alleged that "[a]s of this moment, the Administration believes that the President is legally free to destroy records of his official government conduct" because those records, in the Administration's view, "belong to the President personally, and not to the American people." *Id.* ¶ 3. The complaint also specifically referenced the "15 boxes containing thousands of documents" that NARA previously collected "from President Trump's personal residence at Mar-a-Lago," and alleged that President Trump believed that he "was authorized . . . to retain sole possession of all of these records, to the exclusion of the government." *Id.* ¶¶ 102–104; *see also id.* ¶ 106 (alleging that President Trump "has declared a right to keep classified and

10

other documents that are squarely Presidential records under the PRA"). The new allegations and claims would thus fall well within the scope of the original complaint, and if Plaintiffs were to "file a new lawsuit" as Defendants suggest, Mot. 15, the government could seek to dismiss the second suit on claim-splitting grounds. *See, e.g.*, *Steele v. United States*, 144 F.4th 316, 325 (D.C. Cir. 2025) (claim-splitting bars second suit based on "same nucleus of facts" (quotation omitted)).

Nor are Plaintiffs seeking "relitigation" of whether the Court may enter an injunction against the President. Mot. 13. It was *Plaintiffs* who suggested that the Court "need not resolve the propriety of entering injunctive or mandamus relief against the President at this juncture." Dkt. 22 at 25. But the fact that the current preliminary injunction does not directly address the President is a further reason why the case should not be stayed indefinitely and why further development of the record is warranted. Defendants insist, for example, that the preliminary injunction is sufficient to protect Plaintiffs' interests because "the President's . . . records are generally handled by staff or stored on electronic systems maintained by staff." Mot. 13. But that is a factual assertion that Plaintiffs are entitled to probe through development of the record. Defendants also fault Plaintiffs for failing to "identify" the President's aides who might handle Presidential records but not be bound by the injunction, but again, that is information that *Defendants* possess and would be an appropriate subject of discovery were this case to proceed in the ordinary course.

As mentioned above, Defendants are wrong to suggest that Plaintiffs' claims against NARA are futile. Mot. 14. While the Court held that Plaintiffs had likely not established injury in fact with respect to NARA because its declaration suggested that it was not deviating from its duties under the PRA "at this time," PI Op. 19, the preliminary injunction was focused only on

11

NARA's *preservation* duties under the PRA. The preliminary injunction does not address NARA's responsibility to comply with the PRA at the end of the administration.

For these reasons, although there is no sound basis to stay any of Plaintiffs' claims, at a minimum the Court should not stay any claims that are not at issue in the preliminary injunction appeal, including claims that may be raised in any amended complaint.

### III.    A Stay Would Not Be in the Interest of Judicial Economy

A stay would also not further judicial economy. Defendants suggest that it would be wasteful for the parties "to brief the same constitutional issues . . . simultaneously" in the district court and the Court of Appeals. Mot. 7. But Plaintiffs are not proposing any simultaneous briefing or relitigation of issues that the Court addressed in its preliminary injunction decision. For now, Plaintiffs are proposing only that the case proceed in the ordinary course. If Defendants decide to move to dismiss for reasons that this Court has already rejected, that would be their choice to do so, but nothing would require them to reraise those arguments. *See* Fed. R. Civ. P. 12(h) (Defendants do not waive defenses of lack of subject-matter jurisdiction or failure to state a claim by not including them in a motion to dismiss). And if the D.C. Circuit's decision does provide dispositive guidance on the legal issues, the parties would of course be free to address the D.C. Circuit's decision in supplemental briefing or motion practice. In any event, the potential for overlapping briefing is at most a reason to consider staying the claims at issue on appeal (the claims against the EOP Defendants), not the entire case.

Thus, unlike in *Whitman-Walker Clinic, Inc. v. HHS*, 2021 WL 4033072 (D.D.C. Sept. 3, 2021), Plaintiffs are not contending that they would be harmed by an inability to advance claims that this Court has held are not likely to succeed. *See* Mot. 7. Rather, Plaintiffs seek to move this case forward as to claims that this Court either (i) found are likely to succeed, (ii) did not address in the preliminary injunction (because they were not at issue), or (iii) are new claims that

12

Plaintiffs may include in any amended complaint. There is no reason why it would serve judicial economy to stay such claims.

Moreover, even if Defendants' likelihood of success on appeal is not a formal factor that this Court need consider in assessing a stay, *see* Mot. 6,[1] nothing requires the Court to assume without basis that the D.C. Circuit will radically alter the scope of this litigation. Defendants suggest that all of Plaintiffs' claims, including those for which Plaintiffs did not seek or obtain a preliminary injunction, would fail on the merits "if the Court of Appeals concludes that the PRA is unconstitutional." Mot. 14. But this Court's opinion explains why that argument is highly unlikely to succeed, and Plaintiffs should not be prejudiced merely because the government seeks appellate review of a constitutional theory that this Court soundly rejected. And if the D.C. Circuit affirms this Court's injunction, it would not have been in the interest of judicial economy for the parties to have done nothing toward moving this case toward a final resolution while the case was pending in the Court of Appeals.

Defendants note that the plaintiffs in *Freedom of the Press Foundation (FPF) v. Trump*, No. 26-cv-1402 (D.D.C.), have consented to a stay in that case. But that should have no bearing on whether the Court should issue a stay in this earlier-filed case, over the objection of Plaintiffs who are pursuing different claims and different areas of focus than the plaintiffs in *FPF*. The *FPF* plaintiffs have not named DOJ or the President in his personal capacity as Defendants, nor have they suggested that they may amend their complaint to add claims related to documents seized at Mar-a-Lago that have been returned to President Trump in his personal capacity. And even for the claims that overlap regarding the current Administration's preservation of

---

[1] *Cf. de Csepel v. Hungary*, No. 10-cv-1261, 2022 WL 3026998, at *2–3 (D.D.C. Aug. 1, 2022) (Bates, J.) (considering moving party's likelihood of success on appeal in deciding whether to stay proceedings).

Presidential records, the *FPF* plaintiffs have focused almost exclusively on the Warrington Memo's approach to text or other instant messaging, which this Court addressed in its preliminary injunction, while Plaintiffs here have pursued broader claims.

In short, judicial economy would not be served by leaving district court proceedings idle while the parties pursue what may be multiple levels of appellate review. Plaintiffs submit that the Court should instead allow this case to proceed in the ordinary course. If Defendants believe that a need for a stay arises in the future or continued litigation in the district court becomes unduly burdensome or inefficient, nothing would prevent them from renewing their motion for a stay at that time. But at this juncture, Defendants have not met their burden to justify an indefinite stay of all proceedings.

## CONCLUSION

The Court should deny Defendants' motion for a stay of proceedings. At a minimum, the Court should not stay any claims that are not at issue in the preliminary injunction appeal, including claims that may be raised in any amended complaint.

June 18, 2026                                Respectfully submitted,
                                             */s/ Lynn D. Eisenberg*
                                             Daniel F. Jacobson (D.C. Bar 1016621)
                                             Lynn D. Eisenberg (D.C. Bar 1017511)
                                             Stephen K. Wirth (D.C. Bar. 1034038)
                                             John Robinson (D.C. Bar 1044072)
                                             JACOBSON LAWYERS GROUP PLLC
                                             5100 Wisconsin Ave NW, Suite 301
                                             Washington, DC 20016
                                             (301) 823-1148
                                             lynn@jacobsonlawyersgroup.com


                                             */s/ Loree Stark*
                                             Loree Stark
                                             D.C. Bar No. 90021926

14

American Oversight
1030 15th Street NW, B255
Washington, D.C. 20005
(202) 869-5246
loree.stark@americanoversight.org

*Counsel for Plaintiffs*

15