**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

AMERICAN HISTORICAL
ASSOCIATION et al.,
       Plaintiffs,

              v.

DONALD TRUMP et al.,
       Defendants.

---

Civil Action No. 26-1169 (JDB)

## MEMORANDUM OPINION & ORDER

The American Historical Association and American Oversight have brought suit against a bevy of federal defendants, alleging violations of the Presidential Records Act (PRA). To preserve the status quo during the litigation, plaintiffs initially sought a preliminary injunction. This Court granted that relief last month. Since then, the government has appealed the Court's ruling to the D.C. Circuit. Before this Court now is the government's motion to stay further proceedings in the case pending resolution of its appeal. Plaintiffs oppose a stay. But plaintiffs are minimally harmed by a stay because the status quo requires the government to comply with the PRA, whereas not granting a stay may lead to intrusive discovery into sensitive executive branch offices. Moreover, the outcome of the direct appeal will at least narrow the disputed issues if not resolve the case altogether. Accordingly, the Court finds that a stay is warranted.

## Background

The statutory and factual background is set out in detail in this Court's opinion granting a preliminary injunction and will not be repeated at length here. See Am. Hist. Ass'n v. Trump, Civ. A. Nos. 26-1169 & 26-1402, --- F. Supp. 3d ---, 2026 WL 1412395, at *1-4 (D.D.C. May 20, 2026). In brief, this suit arises from a Department of Justice opinion that the PRA is

1

unconstitutional and White House Counsel's subsequent memorandum setting out new guidance on dealing with presidential records that, in plaintiffs' view (and now the Court's), deviates from the PRA's requirements. See id.

Because plaintiffs have standing and a cause of action, the PRA is likely constitutional, plaintiffs risk irreparable harm absent preliminary relief, and the balance of equities and public interest tip in their favor, the Court entered a preliminary injunction to preserve the status quo during the pendency of this litigation. See id. at 4-28. In other words, the government must comply with the PRA until and unless it obtains relief on appeal or the Court rules in the government's favor on the merits.

The government now seeks a stay of merits proceedings before this Court pending resolution of its appeal, arguing that a stay will advance judicial economy and not prejudice plaintiffs. Mot. to Stay 1, Dkt. 31.[1] Plaintiffs oppose, contending that they wish to raise new claims that would not be addressed by the appeal and that they would be significantly harmed by delay because they might not be able to obtain relief by the end of the current presidential administration. Opp'n 1, Dkt. 34.

### Discussion

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North Am. Co., 299 U.S. 248, 254 (1936); see also Clinton v. Jones, 520 U.S. 681, 706 (1997) (reaffirming district courts' "broad discretion" to stay under Landis). And a stay may be warranted even if another proceeding "may not settle every question

---

[1] "[A]n appeal from an interlocutory order granting or denying a preliminary injunction does not divest the district court of jurisdiction to proceed with the underlying action on the merits." Escobar v. DHS, Civ. A. No. 25-3417, --- F. Supp. 3d ---, 2026 WL 1256234, at *18 (D.D.C. May 7, 2026) (collecting cases).

2

of fact and law" if "in all likelihood it will settle many and simplify them all." Landis, 299 U.S. at 256. Conversely, a court "abuses its discretion in ordering a stay 'of indefinite duration in the absence of a pressing need.'" Belize Soc. Dev. Ltd. v. Gov't of Belize, 668 F.3d 724, 731-32 (D.C. Cir. 2012) (quoting Landis, 299 U.S. at 255)). And "if there is even a fair possibility that the stay for which he prays will work damage to someone else," then the movant for a stay "must make out a clear case of hardship or inequity in being required to go forward." Landis, 299 U.S. at 255.

In deciding whether to issue a stay, courts consider (1) the harm to the nonmoving party from a stay, (2) the harm to the moving party from not issuing a stay, and (3) judicial economy. Nat'l PFAS Contamination Coal. v. EPA, Civ. A. No. 22-132, 2023 WL 22078, at *3 (D.D.C. Jan. 3, 2023) (quoting Ctr. for Biological Diversity v. Ross, 419 F. Supp. 3d 16, 20 (D.D.C. 2019)); OCA—Asian Pac. Am. Advocs. v. Rubio, Civ. A. No. 25-287, 2025 WL 1393153, at *1 (D.D.C. May 14, 2025) (same).

## I.    Harm to Plaintiffs

Plaintiffs argue that they would be substantially prejudiced by a stay because the stay will be lengthy and may prevent them from obtaining final judgment before the end of this presidential administration. Opp'n 7-12. As plaintiffs note, briefing in the D.C. Circuit is set to close in September 2026 and oral argument will be scheduled as soon as possible thereafter, so a decision likely will not issue until 2027. Id. at 3, 7. Any Supreme Court proceedings could then delay resolution of the appeal until June 2028, leaving only half a year of this administration left in which to seek relief. Id. at 7. Fair enough. However, the fact that the Supreme Court might grant certiorari underscores the value of waiting for its authoritative opinion on this weighty constitutional issue. And in the event that it denies certiorari—or certiorari is not sought—the case

may be back before this Court in six to nine months from now.  See, e.g., Make the Road N.Y. v. Mullin, No. 25-5320, --- F.4th ---, 2026 WL 1792978 (D.C. Cir. June 23, 2026) (issuing opinion six months after oral argument in expedited appeal); Talbott v. United States, 176 F.4th 720 (D.C. Cir. 2026) (issuing opinion four months after oral argument in appeal from preliminary injunction).

More importantly, plaintiffs prevailed at the preliminary injunction stage.  As a result, they are minimally harmed by delay because the government must comply with the PRA during the pendency of its appeal.  Plaintiffs resist this conclusion because they now wish to seek injunctive relief regarding the disposal of records at the end of this administration (i.e., in late 2028 or January 2029) and to amend their complaint to sue the President in his personal capacity and other defendants about records the President retained from his first administration.  Opp'n 8-12.  But the Court already ruled that plaintiffs had failed so far to establish injury as to the National Archives and Records Administration—which takes responsibility for presidential records after an administration—because there is no indication that NARA has changed its formerly PRA-compliant policies.  Am. Hist. Ass'n, 2026 WL 1412395, at *9.  If NARA changes its policies, plaintiffs may seek to lift any stay.  And the Court also notes that alleged mishandling of documents retained from the President's first administration has been the subject of extensive civil litigation and criminal investigation for over four years.  See, e.g., Leopold v. FBI, Civ. A. No. 22-1921, 2025 WL 445183 (D.D.C. Feb. 10, 2025) (recounting factual background and addressing request for those records under Freedom of Information Act).  The Court therefore finds limited harm to plaintiffs from waiting to amend their complaint to pursue claims related to those documents.[2]

---

[2] The parties also dispute whether plaintiffs could file a separate lawsuit to bring claims relating to those documents or whether such a challenge would be barred by the claim-splitting doctrine for being related to the "same nucleus of facts."  Contrast Mot. 14-15, and Reply 5-6, Dkt. 35, with Opp'n 10-11.  In the event that they could file a new lawsuit for those claims, the harm to plaintiffs from a stay in this proceeding would be even less.

4

## II.    Harm to the Government

Plaintiffs contend that the government has failed to carry its burden to show it would be harmed by the absence of a stay.  Opp'n 4-6.  The Court agrees with plaintiffs that the mere fact of having to expend resources to defend against a lawsuit is not enough to warrant a stay, especially for a well-resourced litigant such as the government.  See, e.g., Nat'l PFAS, 2023 WL 22078, at *4 (citing cases).  However, this litigation presents weighty and sensitive issues of alleged burdens imposed on the President's and Vice President's offices.  See Cheney v. U.S. Dist. Court for D.C., 542 U.S. 367, 381-82, 391-92 (2004).

Although the Court ruled that a preliminary injunction was warranted, it is another matter to proceed with the merits when that may entail intrusive discovery into core executive offices. Plaintiffs respond that such concerns are premature because they have not yet sought discovery, Opp'n 5, but they also express intent to "probe" defendants' factual assertions "through development of the record," id. at 11, suggesting that they would seek such discovery.  And the government's burden to establish harm is also relatively more limited because the Court found minimal harm to the plaintiffs from issuing a stay.  See Landis, 299 U.S. at 255 (requiring a showing of "clear hardship" if there is a "fair possibility" of prejudice to the non-moving party from a stay).  It has carried that burden here.

## III.    Judicial Economy

Plaintiffs lastly argue that a stay would not be in the interest of judicial economy because they do not propose "relitigation of issues that the Court addressed in its preliminary injunction decision."  Opp'n 12.  The Court disagrees.  Even if plaintiffs do not press claims that the Court found unlikely to succeed, or focus on either claims that were not squarely addressed in the preliminary injunction decision or that are new, id., the same issues of standing, cause of action,

the merits, and the scope of relief will recur.  Appellate guidance on those issues will narrow the scope of the case if not resolve it entirely.  See Landis, 299 U.S. at 256.

Moreover, following any amended complaint the government is entitled to argue in a motion to dismiss—and the Court would therefore likely need to resolve anew—many of the same arguments from the preliminary injunction posture.  And additional complexities would then emerge from possible discovery into sensitive executive branch offices as well as parsing the line between presidential action in a personal versus official capacity over two non-consecutive terms in office, the latter of which is ongoing.

Finally, and as plaintiffs concede, the litigants in the parallel case that the Court consolidated for purposes of the preliminary injunction opinion have jointly proposed a stay.  Opp'n 13; see also Joint Status Report, Freedom of the Press Found. v. Trump, Civ. A. No. 26-1402 (D.D.C. June 4, 2026), Dkt. 20.  Although the plaintiffs here are free to take a different view, the lack of dispute there is illuminating.  These plaintiffs argue that they are pressing more claims against a broader set of defendants, but the fact that their approach is less focused does not suggest judicial economy will be furthered by denying a stay.

## Conclusion

In sum, plaintiffs will be minimally harmed by a stay because they obtained a preliminary injunction and so the status quo favors them, granting a stay will avoid potentially unnecessary discovery into sensitive executive branch offices, and the proceedings on direct appeal will narrow the scope of issues in dispute.  Accordingly, the Court finds in its discretion that a stay is warranted.

\* \* \*

Upon consideration of [31] the government's motion to stay and the entire record herein, it is hereby **ORDERED** that the motion is **GRANTED**; it is further **ORDERED** that the case is

**STAYED** until the end of the expiration date to petition for certiorari following a decision by the D.C. Circuit in Case No. 26-5185 or, if a party petitions for certiorari, then the date of denial of certiorari or the Supreme Court's final disposition of the case.  The stay shall not encompass the preliminary injunction itself or any litigation regarding compliance or enforcement therewith.  **SO ORDERED**.

/s/
_____
JOHN D. BATES
United States District Judge

Date: <u>June 30, 2026</u>